**WIRELESS PROPERTIES, LLC, a Delaware limited liability company, Plaintiff Below, Appellant,**

v.

**CC FINANCE LLC, a Delaware limited liability company, Defendant Below, Appellee.**

No. 163, 2010.

Supreme Court of Delaware.

Submitted: Sept. 15, 2010.

Decided: Oct. 28, 2010.

---

41. *Id.* at 861, 108 S.Ct. 2194.

42. *Id.*

43. *Gattis,* 955 A.2d at 1285.

44. *Los,* 595 A.2d at 385.

Richard D. Allen, Esquire and Thomas W. Briggs, Jr., Esquire, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, for appellant.

Richard H. Morse, Esquire and Michele Sherretta Budicak, Esquire, Young, Conaway, Stargatt & Taylor, LLP, Wilmington, Delaware, and Thomas I. Elkind, Esquire (argued), Foley & Lardner, LLP, Boston, Massachusetts, for appellant.

James D. Taylor, Jr., Esquire, Saul Ewing LLP, Wilmington, Delaware, and David R. Moffitt, Esquire (argued), Saul Ewing, LLP, Wayne, Pennsylvania, for appellee.

Before HOLLAND, JACOBS and RIDGELY, Justices.

HOLLAND, Justice:

The plaintiff-appellant, Wireless Properties, LLC ("Wireless") brought this action for breach of contract pursuant to a Loan and Security Agreement between Wireless and defendant-appellee, CC Finance LLC ("Crown") effective as of September 18, 2006 (the "Loan Agreement"). Wireless filed its initial complaint on October 8, 2009. Crown then moved to dismiss the complaint on the ground that Wireless failed to allege that Crown consented in writing to increases in the Loan Commitment. The Superior Court provisionally dismissed the complaint, finding that the Loan Agreement provided that Crown's consent was required to increase the Loan Commitment. The Superior Court nonetheless granted Wireless an opportunity to amend its complaint.

On January 20, 2010, Wireless filed an amended complaint (the "Amended Complaint"). Crown again moved to dismiss. In a bench ruling, the Superior Court dismissed the Amended Complaint, finding that it did not adequately allege that Wireless had received Crown's consent.

Wireless makes two arguments on appeal. First, Wireless argues that the Su-

perior Court erred in finding that Crown's express consent to increases was required under the Loan Agreement. Second, Wireless claims that the Superior Court erroneously found that the Amended Complaint failed to adequately allege that Crown consented to increases in the Loan Commitment. We have concluded that both arguments are without merit.

### Facts

Crown and Wireless are parties to a Loan Agreement through which Crown agreed to loan Wireless funds for the construction and improvement of cellular communications towers. The Agreement sets forth the terms and conditions upon which Crown would be obligated to advance funds to Wireless in the future. The Agreement defines "Loan Commitment," as follows:

> "Loan Commitment" means Crown's agreed-upon obligation to fund the Loan to Wireless in an amount up to the product of (a) twelve (12); and (b) the aggregate Tower Case Flow generated by the Fifteen Towers (and any subsequent Towers if Crown has agreed in its sole discretion) less all obligations and indebtedness of Wireless that encumbers, in whole or in part, one or more of the Fifteen Towers and any Subsequent Towers. On the execution date of this Agreement, the initial Loan Commitment (as determined by the calculation above), shall be an amount up to Five Million Four Hundred Ninety–Nine Thousand Eight Hundred fifty-Four Dollars and Zero Cents ($5,499,854.00) ... The Loan Commitment may, from time to time, be increased or reduced pursuant to the terms of this Agreement. Notwithstanding anything set forth above or elsewhere in this Agreement, under no circumstances shall the Loan Commitment be adjusted to ex-

ceed the Loan Commitment Maximum Amount of $10,000,000].

The Loan Commitment amount could be "increased or reduced pursuant to the terms of this Agreement." In no event, however, could the Loan Commitment exceed $10 million.

In Section 2.1 of the Agreement, Crown agreed "to lend to Wireless on a non-revolving basis, from time-to-time on or after the date of this Agreement and prior to the [maturity date], amounts which do not exceed the Loan Commitment, as increased or reduced hereunder." Section 2.2(a) of the Agreement, entitled "Discretionary Adjustments to Loan Commitment," describes the terms upon which the Loan Commitment may be increased (or decreased), and specifically provides the following with respect to Crown's consent:

> The then-current Loan Commitment may be increased by Crown at any time and from time-to-time in the exercise of its sole discretion if, prior to the [maturity date], Crown elects to loan additional funds to Wireless pursuant to this Agreement ...

> Anything to the contrary contained in this Agreement notwithstanding, any increase in the Loan Commitment shall be subject to the consent of Crown, which consent Crown may grant or withhold in its sole discretion, and such consent must be in writing.

Section 2.2(b), addressing adjustments resulting from the addition or elimination of tower licenses contains similar language.

Under Section 2.3 of the Agreement, Wireless may "request" an advance once each calendar quarter. Crown is only obligated to disburse, however, upon "satisfaction of the conditions set forth in Article VI of the Agreement." Article VI provides: "In the case of any Advances requested to be made, after giving effect thereto, the aggregate Advances shall not

exceed the maximum amount of Advances permitted under Section 2.1 hereof, as such amount may be adjusted pursuant to Section 2.2. hereof." Accordingly, Wireless' right to an advance at any particular time is capped at the then-existing Loan Commitment amount.

Crown advanced to Wireless the initial Loan Commitment amount of $5,499,845.00. After disbursing the initial Loan Commitment amount of $5,499,845.00, Crown increased the Loan Commitment amount and funded additional advances to Wireless. Many of these additional advances made to Wireless were used to pay Crown interest owed by Wireless under the Agreement. Wireless alleges that on three occasions, Crown declined to fund advances requested by Wireless.

### Issues on Appeal

Wireless' appeal asserts two arguments. First, the Loan Commitment automatically increased, without Crown's written consent, upon the addition of licenses (or increased revenues from existing licenses) by application of the Tower Cash Flow formula set forth in the Agreement. Second, the Amended Complaint adequately alleged that Crown consented to additional increases in the Loan Commitment by periodically calculating in a spreadsheet the effect of new license revenue on the potential availability of funds that could be committed pursuant to the Agreement's formula.

### Crown's Consent Required

Wireless argues that, pursuant to the Tower Cash Flow formula described in the Agreement, the Loan Commitment "would, without any act by Crown, adjust based on changes in revenue or expenses on existing licenses." The Superior Court rejected that argument, holding that "[t]he agreement with respect to further borrowing seems to be clear that increasing the loan commitment was left to the sole discretion of Crown regardless of Wireless' being able to demonstrate that it met the terms of the formula contained in the loan agreement."

Wireless now argues, for the first time on appeal, that because Section 2.1 refers to adjustment "mechanisms" and because Section 2.2 is captioned "Discretionary Adjustments to Loan Commitment" the parties must have also agreed to some additional automatic or "non-discretionary" mechanisms to adjust the Loan Commitment. There is no provision in the Agreement, however, that sets forth an automatic or non-discretionary mechanism. The only provisions of the Agreement that address increases in the Loan Commitment above the original disbursed amount of $5,499,854.00 are Sections 2.2(a) and (b). Neither Section 2.2(a) nor 2.2(b) supports Wireless' argument because they expressly provide:

> Anything to the contrary contained in this Agreement notwithstanding, any increase in the Loan Commitment shall be subject to the consent of Crown, which consent Crown may grant or withhold in its sole discretion, and such consent must be in writing.[1]

The Agreement defines the Loan Commitment as "[C]rown's agreed-upon obli-

---

1. See *Osborn v. Kemp*, 991 A.2d 1153, 1159–60 (Del.2010) ("[w]hen the contract is clear and unambiguous, we will give effect to the plain-meaning of the contract's terms and provisions.") (internal citation omitted); *see also AT & T Corp. v. Lillis*, 953 A.2d 241, 252 (Del.2008) (where no ambiguity exists plain meaning controls as " 'creating [an ambiguity] could, in effect, create a new contract with rights, liabilities, and duties to which the parties had not assented ...' " (citing *Rhone–Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1195–96 (Del. 1992))).

gation to fund the Loan to Wireless in an amount up to the [Tower Cash Flow formula]." If the parties intended the Loan Commitment to equal the amount derived from the formula, it could have been written that way. Instead, the Agreement provides that Crown must first consent to (or "agree to") the ceiling derived under the formula. Crown asserts that the Tower Cash Flow formula serves a purpose: it caps the maximum Loan Commitment amount that Crown could permit in its discretion, and it also limits the maximum decrease in the Loan Commitment that Crown could unilaterally impose. Crown submits it does not, however, as Wireless maintains, automatically obligate Crown to fund additional monies to Wireless. The Superior Court agreed.

The Loan Agreement unambiguously limits Crown's obligation to advance funds to an initial Loan Commitment amount of $5,499,854.00 and provides that any increase in that amount requires Crown's written consent which may be granted or denied in Crown's sole discretion. The Amended Complaint admits that the original Loan Commitment amount was disbursed in full to Wireless. Accordingly, the Superior Court properly held that any alleged failure by Crown to advance fund in amounts above $5,599,854.00, is not actionable, because Crown had the right to withhold its consent.

### Consent Allegations Inadequate

Wireless argues that if Crown's consent was required, the Amended Complaint adequately alleges that Crown consented to increases in the Loan Commitment. The Amended Complaint contains the following allegations regarding Crown's alleged consent to increases in the Loan Commitment:

Section 2.2 of the Loan Agreement contemplates that Wireless, with Crown's consent, may add additional towers or licenses to existing towers that would, by virtue of increased revenues, also increase the Loan Commitment under the formula contained in the Loan Agreement.

Crown consented to increases in the Loan Commitment based on the addition of certain licenses to existing towers owned by Wireless.

Wireless asserts that the Loan Agreement's consent requirement would be met by Crown consenting to Wireless adding licenses to existing towers "that would, by virtue of increased revenues, also increase the Loan Commitment under the formula contained in the Loan Agreement."

The Superior Court noted that these allegations of consent that Wireless added to its Amended Complaint are in "[a] passive voice. Who increased it? How did it get increased? I mean, you are being very vague there. And that's troublesome because this goes to the heart of the argument that we had in December." The Superior Court reasoned, "saying that Crown consented is simply a conclusion. It doesn't say how Crown consented. To the extent that it says how they did that in the allegation, it would be based upon the addition of certain licenses—which is what you did, not them—to existing towers owned by Wireless...."[2]

Alternatively, Wireless argues that the Agreement's written consent requirement was satisfied by alleging that Crown furnished spreadsheets showing "that the then-current Loan Commitment amount as of December 31, 2008 was $8,514,480.17." Wireless alleges that such spreadsheets

---

**2.** *See Beam ex rel. Martha Stewart Living Omnimedia, Inc., v. Stewart,* 833 A.2d 961, 970 (Del.Ch.2003) ("conclusory statements—those unsupported by well-pled factual allegations—are not accepted as true.").

constitute written expressions of Crown's consent. Crown responds that its calculation of the maximum permissible borrowing capacity under the Agreement's Tower Cash Flow formula is in no way the equivalent of an expression of intent—in writing—to obligate itself to advance funds up to that amount.

The words "Loan Commitment" do not appear on the spreadsheets. The spreadsheet calculates the "Loan Used to Date," the "Max[imum] Loan Available" and the "Remaining Loan Capacity." Those terms are consistent with the Agreement, which imposed a formula to cap the maximum Loan Commitment and granted Crown the discretion to loan up that amount (*i.e.*, the "remaining loan capacity."). The Superior Court held that Crown's calculations on a spreadsheet cannot, as a matter of law, constitute the written consent required by the Agreement. We agree.

■ Finally, Wireless alleges that the requirements of a formal writing may be waived. Wireless claims that Crown advanced funds in the past and accordingly, increased the Loan Commitment amount without providing evidence of its written consent. Crown asserts that the loan itself is evidence of Crown's consent. The Superior Court agreed with Crown's position:

> It's one thing for a lender to obligate itself to a loan by advancing the money without including a written statement that the loan amount has been increased. They forked over the money.

At that point they couldn't say, wait a minute, give us the money back, or something along those lines, because the money has been advanced and that's that; even if there's no written document to that effect. So that's one thing.

It's another thing to say, however, that because in one instance or more the lender has turned over the increased loan amount without a written statement that because it's done that in a few instances in the past ... that henceforward they are obligated to turn over money and not put it in writing.

The Agreement recites that "neither [it] nor any portion or provisions hereof may be changed, modified, amended, waived, supplemented, discharged, cancelled, or terminated orally or by any course of dealing, or in any manner other than by an agreement in writing, signed by the party to be charged." The Superior Court properly ruled that there is no basis to conclude that Crown's past advances amount to a waiver of its discretionary ability to refuse to consent in the future.

### *Conclusion*

The judgment of the Superior Court is affirmed.